# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUINTEZ TALLEY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| PA. DEPT. OF CORRECTIONS, Et Al, | : | |
| C/O B. DAVIS, C/O E. HODRICH, C/O | : | |
| LAIUVARA, C/O T. JUNG, LISA DURAND, | : | |
| J. YODIS and UNKNOWN PRC | : | NO. 18-5087 |

## MEMORANDUM OPINION

**Savage, J.**                                                                    December 12, 2018

Plaintiff Quintez Talley, a prisoner at SCI Fayette proceeding *pro se*, filed this civil action challenging discipline he received when he was incarcerated at SCI Graterford. Talley named as defendants the "PA. Dept. of Corrections," C/O B. Davis, C/O E. Hodrich, C/O Laiuvara, C/O T. Jung, Lisa Durand, J. Yodis, and Unknown PRC. He seeks to proceed *in forma pauperis*.

We shall grant Talley leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), we shall dismiss his claims with leave to amend the Americans with Disabilities Act claim against the Department of Corrections.

## FACTS[1]

Talley alleges that on the evening of June 16, 2017, during night time count, Correctional Officers Davis, Hodrich and Laiuvara entered his cell and informed him that they were going to conduct an "investigative (cell) search for 'K-2[,]'" which is apparently a type of drug.[2] Hodrich informed Talley that the search was triggered by another prisoner

---

[1] The following facts are taken from the complaint. Although the complaint refers to various exhibits, those exhibits were not attached to the complaint. The Court adopts the pagination assigned to the complaint by the CM-ECF docketing system.
[2] Compl. ¶ 9 (Document No. 2).

notifying a Lieutenant that Talley had K-2. Although Talley does not allege that the officers found drugs, his complaint implies as much. Davis instructed Hodrich to "cuff [Talley] up."[3]

Talley alleges that he was "caught off guard" because he had never been sanctioned for drugs and had almost $10,000 in his prison account at the time.[4] Hodrich and Laiuvara handcuffed Tally and escorted him to the security department after allowing him to have a cigarette at his request. Hodrich and Laiuvara returned to Talley's cell to continue the search while another officer asked Talley several times "where [he] got the drugs from."[5] Talley alleges that "at some point [he] believe[s] it became obvious to Defendant Davis that [Talley] (1) had no idea where the drugs came from; (2) [Talley] had no need to be selling any drugs, as [he] was flushed [sic] with cash; and (3) the practice of using inmates as some sort of 'confidential informants' had its flaws because sitting right in front of him was a prisoner who'd never had a hot urine, been in possession of drugs, or had any need for petty jail drug sell money!"[6]

The officers asked Talley where he kept his commissary slips as part of their investigation in an apparent effort to determine whether he had purchased commissary items with illicit funds. Talley notes that he "passed [the test] with flying colors" because Laiuvara stated that Talley had nearly $10,000 on his inmate account and had a list for properties to purchase sent by his realtor.[7] Nevertheless, Talley was escorted to the Restricted Housing Unit (RHU).

---

[3] *Id.* ¶ 11.
[4] *Id.* ¶ 12.
[5] *Id.* ¶ 15.
[6] *Id.* ¶ 16.
[7] *Id.* ¶ 20.

When Talley was strip searched upon entry to the RHU, the Lieutenant performing the search asked if he was suicidal, to which Talley responded in the affirmative. The Lieutenant discontinued the search and instructed Talley be taken to the medical department. As he was being escorted to the medical department, the officers asked Talley why he previously failed to mention that he was suicidal, and Talley responded that he is "not [their] 'brother [which is how the officers referred to him]'" and that he did not mention it because they did not ask.[8] Talley was admitted to the psychiatric observation cell, after which he was transferred to the mental health unit, and then to the diversionary treatment unit. Talley spent a total of 38 days in those units—which are "Level 5 Housing" geared toward treating inmates with serious mental health issues—until his misconduct hearing.[9]

On July 24, 2017, Talley had his misconduct hearing before Officer Yodis. Talley presented various defenses, including his belief that he was set up by another inmate. He also claimed that he was denied the opportunity to submit a statement in his defense, call witnesses, or request video footage because he had not been served with a misconduct report. Yodis responded with documentation showing defendant T. Jung signed a misconduct and served it on Talley on June 17, 2017. Talley disputed the record because he was in the psychiatric observation cell on that date and DOC policy states that an inmate in such a cell cannot be served with a misconduct. Talley also disputed that drugs were found on him "contrary to the way it was stated in defendant Davis's misconduct report."[10]

---

[8] *Id.* ¶ 27.
[9] *Id.* ¶ 31.
[10] *Id.* ¶ 33.

Yodis found Talley guilty of the misconduct. Talley alleges that, because the misconduct involved drugs, Yodis, "pursuant to DOC Policy, . . . also completed a document to be submitted to the Intelligence Gathering Captain, triggering [Talley] being placed on visit restriction for six (6) months."[11] The complaint does not reflect the disciplinary sentence imposed by Yodis. However, Talley appears to be alleging that Yodis erred in only crediting to that sentence five of the 38 days Talley spent in Level 5 housing. Talley appealed Yodis' decision.

On appeal, Talley reasserted that he had not been served with the misconduct report and claimed that Yodis erred in only crediting him for five days spent in Level 5 housing. The "Unknown PRC Defendants" handling Talley's appeal "still refused to correct these deficiencies."[12] Talley alleges that "even to this day," he has "never received a copy of the unknown PRC defendants response to his misconduct appeal, which is Defendant Durand's job."[13] Talley suggests that he learned his appeal was denied in the context of another federal civil case.

Based on these allegations, Talley filed this civil action pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA). Talley alleges that since he was in a psychiatric observation cell at the time of the "alleged serving of [his] misconduct" his ability to defend and appeal his misconduct was impaired.[14] He asserts: (1) Jung violated the ADA by serving him with the misconduct while he was in the psychiatric cell "and unable to have access to either pen or paper;" (2) Yodis violated the

---

[11] *Id.* ¶ 35.
[12] *Id.* ¶ 38.
[13] *Id.* ¶ 39.
[14] *Id.* ¶ 53.

4

ADA by finding him guilty of the misconduct and only crediting him five days of time; and (3) the unknown PRC defendants violated the ADA by failing to overturn Yodis' decision.[15]

Talley alleges that same conduct also violated his due process and equal protection rights under the Fourteenth Amendment. He further contends that his Eighth Amendment rights were violated by the "investigative search" of his cell, by virtue of "'excessive confinement' for being treated for [his] mental health issues," and as a result of Yodis' failure to credit him the full 38 days he served in Level 5 housing prior to his hearing.[16] He seeks a declaration that his rights were violated, an injunction expunging the misconduct and/or compelling the defendants to provide him a new misconduct hearing, and damages.

## STANDARD OF REVIEW

Talley is granted leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action.[17] Because he is proceeding *in forma pauperis*, we must screen the complaint and dismiss it if it fails to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). To survive dismissal, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* Because Talley is proceeding *pro se*, we construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[15] Talley also purports to be raising a retaliation claim under the ADA because "DOC policy encourages inmates to inform DOC personnel when they are suicidal." *Id.* ¶ 54.
[16] *Id.* ¶ 66.
[17] However, as Talley is a prisoner, he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

## DISCUSSION

### A. Claims for Declaratory and Injunctive Relief

"An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003). Although it is possible that the DOC could provide Talley with the injunctive relief he seeks, Talley's request for injunctive relief against the individual defendants is moot because Talley is no longer incarcerated at SCI Graterford. *See Randolph v. Rodgers*, 253 F.3d 342, 346 (8th Cir. 2001) ("The actions required by an injunction would be impossible for those four defendants to execute; their authority and power is limited solely to PCC, and any injunctive relief would necessarily be directed at accessibility to hearing-impaired services at JCCC."). Even if Talley's claims for declaratory relief were not moot, he cannot prevail because "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct" and is not "meant simply to proclaim that one party is liable to another." *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam) (citing *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197-98 (3d Cir. 2000) and *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1553-54 (Fed. Cir. 1994) (en banc)); *see also Andela v. Admini. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (per curiam) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").

### B. Americans with Disabilities Act

"Title II of the Americans with Disabilities Act of 1990 (ADA), which prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability, covers inmates in state prisons." *Pa. Dep't of Corr. v.*

6

*Yeskey*, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. §§ 12131 & 12132) (internal quotations omitted). Although the Third Circuit has not addressed the issue precedentially, most courts "have held that Title II does not authorize suits against government officers in their individual capacities." *Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008); *see also Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (per curiam) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."). "To prevail on a claim for violation of Title II of the ADA, the plaintiff must show: (1) … [he] is a qualified individual with a disability; (2) . . . [he] was either excluded from participation in or denied the benefits of some public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and, (3) . . . [he was] exclu[ded], deni[ed] . . . benefits or discriminat[ed]" against because of his disability. *Douris v. Dougherty*, 192 F. Supp. 2d 358, 368 (E.D. Pa. 2002).

Because Title II of the ADA does not provide a basis for individual liability, we shall dismiss the ADA claim against the individual defendants. Talley may amend his complaint to allege facts to state his ADA claims against the DOC. He must set forth the alleged disability, what benefits, services, or activities he was excluded from or denied, and how the DOC's actions were because of the alleged disability.

### C. Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*,

7

487 U.S. 42, 48 (1988).  The facts pled by Talley do not establish a plausible constitutional violation.

### 1.  Eighth Amendment Claims

Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment only if they satisfy two criteria.  First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted).  Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety."  *Id.*

The punishment and/or conditions alleged by Talley did not deprive him of basic necessities nor represent "a dramatic departure from accepted standards for conditions of confinement."  Thus, he has no Eighth Amendment claim.  *See McDowell v. Litz*, 419 F. App'x 149, 152 (3d Cir. 2011) (per curiam) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003)) (holding that 90-day suspension of telephone privileges and loss of institutional employment as a result of disciplinary sanction did not violate the Eighth Amendment); *see also Gilblom v. Gillipsie*, 435 F. App'x 165, 168 (3d Cir. 2011) (rejecting Eighth Amendment claim based on thirty-six hour "placement in a dry cell for the purpose of searching [plaintiff's] excrement"); *Young v. Beard*, 227 F. App'x 138, 141 (3d Cir. 2007) (per curiam) ("We also reject Young's claim that placement in disciplinary confinement itself amounted to cruel and unusual punishment" (citing *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)).  Furthermore, "[a] single cell search is generally insufficient to

8

constitute an Eighth Amendment violation" especially in light of Talley's recognition that officers had received a tip—even if false—that there were drugs in his cell. *Washington v. Wenerowicz*, No. CV 14-06916, 2017 WL 4404405, at *4 (E.D. Pa. Oct. 3, 2017) (citing cases).

### 2. Fourteenth Amendment Claims

To the extent Talley is claiming a violation of his due process rights under the Fourteenth Amendment in connection with the disciplinary proceedings, his claim fails. "[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)).

The complaint does not clearly state the discipline imposed upon Talley, but it is apparent that he was confined in "Level 5 Housing" for 38—some of which was as a result of his statement that he was suicidal, rather than the disciplinary proceeding—and that he was placed on "visit restriction" for six months.[18] Those sanctions are insufficient to trigger due process protections. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) ("[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest [for purpose of triggering due process protection]." (quoting *Sandin*, 515 U.S. 472 (1995))); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court

---

[18] Compl. ¶¶ 35, 38.

9

of law" and does not constitute a due process violation (quotation omitted)). Indeed, Talley himself admits that the facts he alleges "may fall short of satisfying the 'atypical and significant hardship' requirement."[19] Therefore, Talley cannot establish a due process violation based on the facts pled in his complaint. *See McDowell*, 419 F. App'x at 152 (no due process violation where "McDowell claimed that, as a result of the disciplinary proceeding, he was sanctioned to a 90–day suspension of his telephone privileges and the loss of his institutional employment.").

Talley also asserts an equal protection violation "under the class of one theory." He alleges that he "was denied the equal opportunity as any other prisoner subjected to a disciplinary hearing, to submit (a) a statement and/or (b) witness request, with no rational basis for this difference in treatment." [20] "[T]o state a claim for "class of one" equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). Talley's allegation, which forms the sole basis for his equal protection claim, amounts to nothing more than a formulaic recitation of the elements of a "class of one" equal protection claim. He has not alleged any facts regarding who would be considered similarly-situated parties nor has he alleged that he was the only inmate to have been subjected to a disciplinary proceeding without the opportunity to submit a statement or witness request. *See Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (finding equal protection claim not pled where plaintiff failed to "allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis

---

[19] Compl. at 14 n.8.
[20] Compl. ¶ 63.

10

for his different treatment"); *Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238–39 (3d Cir. 2011) ("Without more specific factual allegations as to the allegedly similarly situated parties, he has not made plausible the conclusion that those parties exist and that they are like him in all relevant aspects."); *Renchenski v. Williams*, 622 F.3d 315, 338 (3d Cir. 2010) ("He does not allege, for example, that he is the only inmate in SCI–CT who, though not charged or convicted of a sex offense, was nonetheless labeled a sex offender based on a history of abusive sexual behavior and recommended to sex offender therapy"). Hence, the complaint does not state an equal protection claim as pled.

## CONCLUSION

Because Talley has not stated plausible claims for relief, we shall permit him to amend his complaint to state a cause of action under the ADA against the DOC.

/s/TIMOTHY J. SAVAGE